**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| PREFERENTIAL NETWORKS IP, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 2:18-cv-00335 |
| V. | § | |
| | § | |
| CEBRIDGE ACQUISITION, L.P. D/B/A | § | **JURY TRIAL DEMANDED** |
| SUDDENLINK COMMUNICATIONS, | § | |
| | § | |
| Defendant. | § | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Pursuant to Fed. R. Civ. P. 15(a), Plaintiff, Preferential Networks IP, LLC ("PrefNet" or "Plaintiff"), by and through their undersigned counsel, hereby respectfully submits this Complaint against the below-named Defendant, as follows:

**NATURE OF THE ACTION**

1. This is a patent infringement action to stop Suddenlink's infringement of United States Patent No. 8,577,994 (the "'994 patent" or "patent-in-suit").

**THE PARTIES**

2. Plaintiff, Preferential Networks IP, LLC, is a Texas Limited Liability Company with an office and place business at 1400 Preston Road, Suite 482, Plano, Texas 75093.

3. Upon information and belief, Defendant, Cebridge Acquisition, L.P. d/b/a Suddenlink Communications ("Suddenlink"), is a corporation established under the laws of the State of Delaware, with a place of business at 3015 SE Loop 323, Tyler, Texas 75701.

**JURISDICTION AND VENUE**

4. This action arises under the patent laws of the United States, 35 U.S.C. § 1 et seq., including 35 U.S.C. §§ 271, 281, 283, 284, and 285. This Court has subject matter jurisdiction over this case for patent infringement pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5. The Court has personal jurisdiction over Suddenlink, including because Suddenlink has minimum contacts within the State of Texas; Suddenlink has purposefully availed itself of the privileges of conducting business in the State of Texas; Suddenlink regularly conduct business within the State of Texas; and Plaintiff's cause of action arises directly from Suddenlink's business contacts and other activities in the State of Texas, including at least by virtue of Suddenlink's infringing methods and systems, which are at least sold, practiced and/or used in the State of Texas. Further, this Court has general jurisdiction over Suddenlink, including due to its continuous and systematic contacts with the State of Texas. Further, on information and belief, Suddenlink is subject to the Court's jurisdiction, including because Suddenlink has committed patent infringement in the State of Texas.

6. Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. §§ 1391 and 1400(b), including because Suddenlink has committed patent infringement, including as noted herein, in this District and it has a regular and established place of business in this District, without limitation at 3015 SE Loop 323, Tyler, Texas 75701.

## INTRODUCTION

7. The technologies owned by PrefNet include those related to bandwidth allocation in network servers, including methods, computer-readable media, and systems for management of bandwidth allocation in a network server.

8. PrefNet is the current assignee of the patent-in-suit and has standing to bring this lawsuit, including the right to recover damages for past, present, and future infringement of the patent.

9. The '994 patent is one of many patents developed and patented by the named inventor, Gary Schuster, involving computer and network technologies. Mr. Schuster and the other inventors filed provisional patent application 60/198,491 with the United States Patent and Trademark Office ("USPTO") on April 18, 2000. The '994 Patent was filed as application No. 13/457,279 on April

26, 2012 and issued on November 5, 2013. The '994 Patent is a continuation of application No. 13/161,063, filed on June 15, 2011, now U.S. Patent No. 8,171,113, which is a continuation of application No. 12/881,082, filed on September 13, 2010, now U.S. Patent No. 7,966,416, which is a continuation of application No. 12/114,215, filed on May 2, 2008, now U.S. Patent No. 7,797,408, which is a continuation of application No. 09/837,319, filed on April 18, 2001, now U.S. Patent No. 7,370,110.

10. The Abstract of the '994 Patent states the following:

A server is configured to transfer information to a plurality of client devices in accordance with bandwidth-limiting and bandwidth-adjustment techniques. Bandwidth may be reduced based on an amount of data previously transferred to a client device (e.g., within a prior time period). Bandwidth may also be reduced based on variable input parameters such as file size, data type, server load, network response time, and number of transfer requests from a client device within a prior period of time. In some embodiments, bandwidth may be reduced by inserting delays between portions of data being transmitted. A length of a delay period may be determined based on the various factors above (amount of previous data transfer(s), file size, etc.). Bandwidth to a client device may also be adjusted dynamically. In some embodiments, bandwidth may be increased (rather than decreased).

11. As of the priority date of the '994 Patent, publicly accessible servers, particular servers that provide storage space for no charge, such as servers on free web hosts, were often used inappropriately in violation of agreed terms of service for the distribution of media files such as large software, music, and video files. '994/1:28-32. Such media files tended to be, and still are, much larger than the files that the host service is intended for. '994/1:32-34.

12. Consequently, the storage and exchange of these inappropriate files demands greater bandwidth than more appropriate uses, thereby choking and discouraging the uses that the web server is intended to serve. '994/1:35-37. Additionally, these types of media files often contain illegally copied content that may lend an undesirable taint to operators of web hosting services who do not wish to be perceived as encouraging copyright violations. '994/1:37-40. Another injury caused by such inappropriate use was, and still is, disproportionately heavy use of the server by

relatively few users, thereby reducing the number of subscribers that the hosting service attracts. '994/1:41-44. A related problem is the devaluation of advertising space as a result of people downloading such files, and the potential for alienating advertisers who have purchased advertising space on the servers serving such files. '994/1:44-47.

13. In view of these issues and others, methods and systems were needed to discourage inappropriate use of publicly available, network-connected server space, without adversely affecting intended uses of the server space or restricting public access, wherein the method and system integrate seamlessly and cost-effectively with existing network protocols and server software and hardware. '994/1:48-52.

14. The recited technology provides methods and systems for operating a network server, whereby the rate at which files are served from the server storage device to public users on the network depends primarily on the file size, and secondarily on other parameters, such as server load and file type. '994/1:57-61. In particular, the transfer rate of each requested file is controlled and varied during transfer of the file. '994/1:61-63.

15. The methods are particularly suitable for application to every file transferred from the server. '994/1:63-64.  Additionally, the methods may be applied only to selected files or types of files. '994/1:64-66. The transfer rate may be progressively slowed (decelerated) as each file is transferred from or to the network. '994/1:66-2:1. Consequently, relatively small files are not noticeably delayed, while very large files may be very substantially delayed relative to the rate at which they would be transferred without implementation of the invention. '994/2:1-5. The delaying action serves to preserve system bandwidth for transfer of smaller files, and further discourages users from requesting the transfer of large files, thereby preserving system bandwidth to an even greater degree. '994/2:5-8. The response of the server to appropriate uses can be greatly improved at the same time system performance is deliberately degraded for inappropriate uses.

'994/2:8-11. Furthermore, the method is easy to implement in a variety of different systems while adding minimal system overhead. '994/2:11-14.

16. The server may be connected through a network, such as the Internet, to a plurality of client devices, and configured to transfer information between any selected one of the client devices and a memory for static storage of information. '994/2:14-18. Additionally, the methods may increase the defined delay period after each execution of a packet transfer cycle (or after a selected number of cycles), thereby discouraging the transfer of unacceptably large files. '994/2:26-29. The delay period may be initiated, and the amount of increase or other adjustment to the delay period during the transfer cycle may be controlled, by selected a predetermined value from a table, or by calculating a value based on variable input parameters such as the file size, server load, network response time, and number of transfer requests from the client device within a defined prior period. '994/2:29-36. The number of information bits in the packet-that is, the packet size-may have a value that is similarly initiated and adjusted during the transfer cycle. '994/2:36-38.

17. As noted in the '994 patent, the technologies of the '994 patent solve all or some of the above problems by at least the following:

     a. Reducing or eliminating the choking and discouragement of uses that the web server is intended to serve because the greater bandwidth demands required for the storage and exchange of inappropriate files compared to more appropriate uses. '994/1:35-37.

     b. Reducing or eliminating the amount of media files containing illegally copied content, that may lend an undesirable taint to operators of web hosting services who do not wish to be perceived as encouraging copyright violations. '994/1:37-40.

     c. Reducing or eliminating disproportionately heavy use of the server by relatively few users which may reduce the number of subscribers that the hosting service attracts. '994/1:41-44.

     d. Reducing or eliminating the devaluation of advertising space as a result of people downloading such files, and the potential for alienating advertisers who have purchased advertising space on the servers serving such files. '994/1:44-47.

e.  Preserving system bandwidth for transfer of smaller files, and further discouraging users from requesting the transfer of large files, thereby preserving system bandwidth to an even greater degree. '994/2:5-8.

f.  Greatly improving the response of the server to appropriate uses while at the same time deliberately degrading system performance for inappropriate uses. '994/2:8-11; and/or

g.  Increasing the defined delay period after each execution of a packet transfer cycle (or after a selected number of cycles), thereby discouraging the transfer of unacceptably large files, wherein the delay period may be initiated, and the amount of increase or other adjustment to the delay period during the transfer cycle may be controlled, by selected a predetermined value from a table, or by calculating a value based on variable input parameters such as the file size, server load, network response time, and number of transfer requests from the client device within a defined prior period. '994/2:26-36.

18. The technology recited in the claims of the '994 Patent provides inventive concepts and the claims are not directed to abstract ideas. The inventive concepts greatly enhance and facilitate technological methods, computer-readable media, and systems which comprise receiving, at a first computer system, information indicating a request to transfer data to a second computer system; wherein the first computer system determines a quantity of other data previously transferred to the second computer system; and in response to said determining, the first computer system throttling transfer of the data to the second computer system, wherein the throttling is based at least in part on the determined quantity of other data previously transferred to the second computer system and comprises transmitting, to the second computer system, a first portion of the requested data at a first effective rate; and determining to delay a transmission of a second, subsequent portion of the requested data to the second computer system in order to cause the second portion to be transmitted to the second computer system at a second effective rate that is slower than the first effective rate.

19. The technology recited in the claims of the '994 patent improves the functioning of computers, it improves computer capabilities, and it improves over existing technological processes, including with respect to network access and bandwidth management and allocation,

wherein a server or other computer hardware is configured to transfer information to a plurality of client devices in accordance with bandwidth-limiting and bandwidth-adjustment techniques, including reducing bandwidth based on an amount of data previously transferred to a client device, based on variable input parameters such as file size, data type, server load, network response time, and number of transfer requests from a client device within a prior period of time, by inserting delays between portions of data being transmitted determined based on the various factors above, or adjusted dynamically.

20. One inventive component of the '994 patent is improving network access and bandwidth management and allocation in ways that are necessarily rooted in computer, specifically network, technology to overcome problems specifically arising in the realm of computer networks. The claims recite an invention that was not merely a routine or conventional use of conventional devices and technologies. The claimed invention was not practiced by others prior to the '994 invention, nor was it a well-known, fundamental economic or conventional business practice, nor was it a practice to which general-purpose computer components were added after the fact.

21. Claim 1 of the '994 Patent covers the following:

> A method, comprising:
> receiving, at a first computer system, information indicating a request to transfer data to a second computer system;
> the first computer system determining a quantity of other data previously transferred to the second computer system; and
> in response to said determining, the first computer system throttling transfer of the data to the second computer system, wherein the throttling is based at least in part on the determined quantity of other data previously transferred to the second computer system and comprises:
> > transmitting, to the second computer system, a first portion of the requested data at a first effective rate; and
> > determining to delay a transmission of a second, subsequent portion of the requested data to the second computer system in order to cause the second portion to be transmitted to the second computer system at a second effective rate that is slower than the first effective rate.

22. Independent claims 1, 8, and 16 of the '994 Patent have many similarities with each other,

and are each valid for at least the same reasons. Claim 8 comprises computer-readable memory having instructions stored thereon that are executable by a first computer system to cause the first computer system to perform operations comprising the method described in claim 1. Claim 16 comprises a computer comprising a processor and storage device having instructions stored thereon that are executable by the processor to cause the computer system to perform operations comprising the method described in claim 1.

23. Neither claim 1 nor any other claims of the '994 Patent is directed to an abstract idea. Neither claim 1 nor any other claims of the '994 Patent preempt any abstract idea or otherwise preempt anything that would render them unpatentable. For example, one is free to practice the prior art of record and the prior art referenced in the specification and during prosecution. The '994 claims do not improperly inhibit further discovery by tying up any building blocks of human ingenuity or technological work.

24. The '994 Patent claims cannot be practiced by a human alone and there exists no human analogue to the methods, computer-readable media, or systems claimed in the '994 Patent. The claims are specifically directed to, *inter alia*, network access and bandwidth management and allocation, wherein a server or other computer hardware is configured to transfer information to a plurality of client devices in accordance with bandwidth-limiting and bandwidth-adjustment techniques, including reducing bandwidth based on an amount of data previously transferred to a client device, based on variable input parameters such as file size, data type, server load, network response time, and number of transfer requests from a client device within a prior period of time, by inserting delays between portions of data being transmitted determined based on the various factors above, or adjusted dynamically. These things exist only in the context of computers, and specifically computer networks.

25. The claims of the '994 Patent cover, among other things, specific applications of specific

methods, specific computer-readable media, and computer systems for transferring information to a plurality of client devices in accordance with bandwidth-limiting and bandwidth-adjustment techniques, including reducing bandwidth based on an amount of data previously transferred to a client device, based on variable input parameters such as file size, data type, server load, network response time, and number of transfer requests from a client device within a prior period of time, by inserting delays between portions of data being transmitted determined based on the various factors above, or adjusted dynamically, including in order to achieve the aims of the invention as stated above, and to overcome the shortcomings in the prior art, including prior art network access and bandwidth management and allocation methods, computer-readable media, and systems, as noted above. The claims comprise, among other things, specific applications or improvements to technologies in the marketplace, including improvements to the existing network access and bandwidth management and allocation methods, computer-readable media, and systems. Properly understood, the claimed technology constitutes the application of certain ideas, and it necessitates the use of discrete computer hardware and software components configured and programmed in a particular way that enable performance of the specified functions.

26. Further, including when claim 1 is viewed as a whole at the time of the invention, there are sufficient unconventional, non-routine, novel, meaningful, and inventive claim limitations to claim 1 that are sufficient to ensure that the claim in practice amounts to significantly more than merely a patent on any abstract idea or patent ineligible concept. Those unconventional, non-routine, novel, meaningful, and inventive claim limitations comprise the following: receiving, at a first computer system, information indicating a request to transfer data to a second computer system; wherein the first computer system determines a quantity of other data previously transferred to the second computer system; and in response to said determining, the first computer system throttling transfer of the data to the second computer system, wherein the throttling is based at least in part

on the determined quantity of other data previously transferred to the second computer system and comprises transmitting, to the second computer system, a first portion of the requested data at a first effective rate; and determining to delay a transmission of a second, subsequent portion of the requested data to the second computer system in order to cause the second portion to be transmitted to the second computer system at a second effective rate that is slower than the first effective rate. Such unconventional, non-routine, novel, meaningful, and inventive claim limitations further comprise methods, systems and apparatuses that throttle the transfer of the data based at least in part on the determined quantity of other data previously transferred.

27. The invention of claim 1 uses computer technology to overcome the shortcomings of prior art overcome the shortcomings of prior art methods, computer-readable media, and systems, as noted above, including state of the art network access and bandwidth management and allocation methods, computer-readable media, and systems, which lacked, among other things, the ability to perform the foregoing steps. As such, claim 1 overcomes a technical problem and effects an improvement to a specific technology or technical field, namely computer networks and networking. One such inventive component of the '994 Patent is improving network access and bandwidth management and allocation in ways that are necessarily rooted in computer technology to overcome problems specifically arising in the realm of computer networks, including the Internet. The claims recite an invention that was not merely a routine or conventional use of the Internet.

28. Claim 1 is not directed to a longstanding commercial practice nor does it merely apply generic or general purpose computers to prior art methods, computer-readable media, or systems. Including as noted above, prior art methods, computer-readable media, and systems were incapable of the functionality of the method of claim 1. The technology claimed in the '994 Patent does not preempt all types of network access and bandwidth management and allocation or anything else.

For example, the prior art cited on the face of the '994 Patent remains available for practice by Suddenlink, and the '994 Patent claims do not preempt practice of those prior art methods, computer-readable media, or systems.

29. Dependent claim 4 of the '994 Patent has many similarities with claim 1, and it is valid for at least the same reasons. Claim 4 also contains additional unconventional, non-routine, novel, meaningful, and inventive claim limitations, including when the claim is viewed as a whole, which comprise the request to transfer data specifying a particular data file.

30. Dependent claim 6 of the '994 Patent has many similarities with claim 1, and it is valid for at least the same reasons. Claim 6 also contains additional unconventional, non-routine, novel, meaningful, and inventive claim limitations, including when the claim is viewed as a whole, which comprise the data packets being used to transfer the data to the second computer system; and wherein determining the quantity of other data previously transferred to the second computer system is based, at least in part, on data transferred during a defined prior period of time.

31. Independent claim 8 of the '994 Patent has many similarities with claims 1 and 16, and is valid for at least the same reasons. Claim 8 also contains additional unconventional, non-routine, novel, meaningful, and inventive claim limitations, including when the claim is viewed as a whole, which comprise computer-readable memory having instructions stored thereon that are executable by a first computer system to cause the first computer system to perform operations comprising receiving, at the first computer system, information indicating a request to transfer data to a second computer system; determining a quantity of other data previously transferred to the second computer system; and in response to said determining, causing transfer of the data to the second computer system to be throttled, wherein the throttling is based at least in part on the determined quantity of other data previously transferred to the second computer system and comprises transmitting a first portion of the requested data to the second computer system at a first effective

rate; and determining to delay transmission of a second, subsequent portion of the requested data to the second.  Such unconventional, non-routine, novel, meaningful, and inventive claim limitations further comprise compute readable media with instructions comprising the transfer of the data based at least in part on the determined quantity of other data previously transferred.

32. Claim 8 of the '994 Patent covers, among other things, non-transitory computer-readable media executed on a data processing system comprising specific applications of specific methods by a specialized computer of for transferring information to a plurality of client devices in accordance with bandwidth-limiting and bandwidth-adjustment techniques, including reducing bandwidth based on an amount of data previously transferred to a client device, based on variable input parameters such as file size, data type, server load, network response time, and number of transfer requests from a client device within a prior period of time, by inserting delays between portions of data being transmitted determined based on the various factors above, or adjusted dynamically, including in order to achieve the aims of the invention as stated above, and to overcome the shortcomings in the prior art, including prior art network access and bandwidth management and allocation methods, computer-readable media, and systems, as noted above. The claims comprise, among other things, specific applications or improvements to technologies in the marketplace, including improvements to the existing network access and bandwidth management and allocation methods, computer-readable media, and systems. Properly understood, the claimed technology constitutes the application of certain ideas, and it necessitates the use of discrete computer hardware and software components configured and programmed in a particular way that enable performance of the specified functions, including in order to achieve the aims of the invention as stated above, and to overcome the shortcomings in the prior art, including prior art network access and bandwidth management and allocation methods, computer-readable media, and systems, as noted above. Claim 8 comprises, among other things, specific applications or

improvements to technologies in the marketplace, including improvements to the existing network access and bandwidth management and allocation methods, computer-readable media, and systems. Properly understood, the claimed technology constitutes the application of certain ideas, and it necessitates the use of discrete computer hardware and software components configured and programmed in a particular way that enable performance of the specified functions, including through non-transitory computer-readable media having instructions stored thereon.

33. Further, including when claim 8 is viewed as a whole, there are sufficient unconventional, non-routine, novel, meaningful, and inventive claim limitations to claim 8 that are sufficient to ensure that the claim in practice amounts to significantly more than merely a patent on any abstract idea or patent ineligible concept. Those unconventional, non-routine, novel, meaningful, and inventive claim limitations comprise the following: computer-readable memory having instructions stored thereon that are executable by a first computer system to cause the first computer system to perform operations comprising receiving, at the first computer system, information indicating a request to transfer data to a second computer system; determining a quantity of other data previously transferred to the second computer system; and in response to said determining, causing transfer of the data to the second computer system to be throttled, wherein the throttling is based at least in part on the determined quantity of other data previously transferred to the second computer system and comprises transmitting a first portion of the requested data to the second computer system at a first effective rate; and determining to delay transmission of a second, subsequent portion of the requested data to the second.

34. In addition to what has been stated above, the invention of claim 8 uses computer technology to overcome the shortcomings of prior art methods, computer-readable media, and systems, including state of the art network access and bandwidth management and allocation methods, computer-readable media, and systems, which lacked, among other things, the ability to

perform the foregoing steps. As such, claim 8 overcomes a technical problem and effects an improvement to a specific technology or technical field, namely computer networks and networking. One such inventive component of the '994 Patent is improving network access and bandwidth management and allocation in ways that are necessarily rooted in computer technology to overcome problems specifically arising in the realm of computer networks, including the Internet. The claims recite an invention that was not merely a routine or conventional use of the Internet.

35. In addition to what has been stated above, claim 8 is not directed to a longstanding commercial practice nor does it merely apply generic or general purposes computers to prior art methods, computer-readable media, or systems. Including as noted above, prior art methods, computer-readable media, or systems were incapable of the functionality of the method, and computer-readable media performing said method, of claim 8. The technology claimed in the '994 Patent does not preempt all types of network access and bandwidth management and allocation or anything else. For example, the prior art cited on the face of the '994 Patent remains available for practice by Suddenlink, and the '994 Patent claims do not preempt practice of those prior art methods, computer-readable media, or systems.

36. Dependent claim 13 of the '994 Patent has many similarities with claim 8, and it is valid for at least the same reasons. Claim 13 also contains additional unconventional, non-routine, novel, meaningful, and inventive claim limitations, including when the claim is viewed as a whole, which comprise the request to transfer data to the second computer system being a request for a file hosted by a server running on the first computer system.

37. Dependent claim 14 of the '994 Patent has many similarities with claim 8, and it is valid for at least the same reasons. Claim 14 also contains additional unconventional, non-routine, novel, meaningful, and inventive claim limitations, including when the claim is viewed as a whole, which

comprise determining the quantity of other data previously transmitted to the second computer system is based, at least in part, on network identification information associated with the second computer system.

38. Dependent claim 15 of the '994 Patent has many similarities with claim 8, and it is valid for at least the same reasons. Claim 15 also contains additional unconventional, non-routine, novel, meaningful, and inventive claim limitations, including when the claim is viewed as a whole, which comprise causing the transfer of the data to the second computer system to be throttled is based, at least in part, on the quantity of other data previously transmitted to the second computer system being greater than a threshold amount of data.

39. The inventiveness of the asserted claims over the prior art is further indicated by the U.S. Patent & Trademark Office's decision to deny institution of inter partes review of the '994 claims in IPR2018-00184.

40. A prior motion to dismiss asserting that the '994 claims were directed to abstract ideas was properly denied in a prior case in this District. *See* Civil Action No . 2:16-cv-01374-JRG-RSP, Docs 44 and 48.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 8,577,994

41. Plaintiff refers to and incorporates herein the allegations in the above paragraphs.

42. The '994 Patent, entitled "Management of Bandwidth Allocation in a Network Server," was duly and legally issued by the USPTO on November 5, 2013 after full and fair examination.

43. The claims of the '994 Patent cover, *inter alia*, methods, computer-readable media, and systems, including associated with computers and computer networks, for receiving, at a first computer system, information indicating a request to transfer data to a second computer system; wherein the first computer system determines a quantity of other data previously transferred to the second computer system; and in response to said determining, the first computer system throttling

transfer of the data to the second computer system, wherein the throttling is based at least in part on the determined quantity of other data previously transferred to the second computer system and comprises transmitting, to the second computer system, a first portion of the requested data at a first effective rate; and determining to delay a transmission of a second, subsequent portion of the requested data to the second computer system in order to cause the second portion to be transmitted to the second computer system at a second effective rate that is slower than the first effective rate.

44. Suddenlink has infringed and is now infringing, including literally, jointly, and/or equivalently, the '994 patent, including at least claims 1, 4, 6, 8, 13, 14, & 15 in this judicial district, the State of Texas, and elsewhere in the United States, in violation of 35 U.S.C. § 271 through actions comprising the practicing, making, using, offering for sale, and/or selling, without authority from Plaintiff, methods, computer-readable media, and systems, including associated with computers and computer networks, for receiving, at a first computer system, information indicating a request to transfer data to a second computer system; wherein the first computer system determines a quantity of other data previously transferred to the second computer system; and in response to said determining, the first computer system throttling transfer of the data to the second computer system, wherein the throttling is based at least in part on the determined quantity of other data previously transferred to the second computer system and comprises transmitting, to the second computer system, a first portion of the requested data at a first effective rate; and determining to delay a transmission of a second, subsequent portion of the requested data to the second computer system in order to cause the second portion to be transmitted to the second computer system at a second effective rate that is slower than the first effective rate.

45. Suddenlink infringes the '994 Patent by and through at least its throttling of the networks of its customers and/or end users, including by delaying transmissions of files on its network based, at least in part, on the end user's prior data usage. Specifically, Suddenlink infringes by and

through at least its practicing of the patented method, making and/or using computers, including computers comprising computer-readable media specifically made and/or used for performing the patented method, and/or making and/or using computer systems specifically made and/or used for performing the patented method, including by providing and throttling Internet and other network services, including at least the Suddenlink services comprising Suddenlink High-Speed Internet Services, including Internet 50.0, Internet 75.0, Internet 100.0, Internet 150.0, 1 Gig Internet, and Wifi@Home, including residential and business versions thereof.

46. More specifically, without limitation, Suddenlink infringes the '994 Patent by offering internet services to its customers that employ throttling techniques in its network management practices, which, *inter alia*, delay transmissions of files on Suddenlink's networks based, at least in part, on the prior data usage of Suddenlink's customers and/or end users, for example:

> Historically, the third-party circuits serving the cable systems listed in this document have tended to become congested between the hours of 4 p.m. and Midnight local time. To relieve congestion during those hours and thus help ensure that all customers in these systems receive a fair and equitable share of available bandwidth to the Internet, we installed technology that reviews customer accounts associated with the most commonly subscribed service package in each area; identifies those accounts with heavy usage, as defined below, occurring in the most recently measured 10-minute period between 4 p.m. and Midnight; and decreases these customers' access speeds for one hour.

*See,       e.g.,*       Suddenlink's       Bandwidth       Management       Practices       at https://www.suddenlink.com/bandwidth-management

> following such a change will constitute your acceptance thereof. You also agree that Suddenlink may use technical means, including but not limited to suspending or reducing the speed of the Internet Service, to ensure compliance with your tier of service and to ensure that Suddenlink's High Speed Internet Service operates efficiently. You further agree that Suddenlink has the right to monitor your usage patterns to facilitate the provision of Suddenlink's High Speed Internet Service and to ensure your compliance with the package of service you selected and the Service Agreement and to efficiently manage the network and the provision of High Speed Internet Services. Suddenlink may take such steps as it determines appropriate in the event your usage of the Internet Service does not comply with the package of service you selected or the Service Agreement. Additionally, Suddenlink may use such tools and techniques as it determines appropriate in order to efficiently manage its network and to ensure a quality user experience for its subscribers.

*See, e.g.*, Acceptable Use Policy at https://www.suddenlink.com/acceptable-use-policy. As detailed in Suddenlink's Bandwidth Management Practices, Suddenlink implements technology that reviews customer accounts associated with the most commonly subscribed service package in each area; identifies those accounts with heavy usage, as defined below, occurring in the most recently measured 10-minute period between 4 p.m. and Midnight; and decreases these customers'

access speeds for one hour. This practice results in some subscribers experiencing lower internet speeds, including based on the subscriber's prior data usage during the period as claimed in independent claims 1 and 8 of the '994 Patent.

47. Suddenlink's Internet services and network further infringe dependent claims 4, 6, 13, 14, and 15 of the '994 Patent. Suddenlink's Internet services and network include features such as the subscriber's cable modem specifically requesting a particular data file; determining bandwidth usage data for a subscriber (amount of data sent and received by a cable modem over a period of time); a subscriber's cable modem requesting a filed hosted by Suddenlink, such as Suddenlink's website; network identification information of the cable modem sent to the network in determining a subscriber's bandwidth usage data; and throttling based on a subscriber's overall upstream or downstream usage reaching a pre-determined threshold amount.

48. Plaintiff reserves the right to take discovery regarding Suddenlink's first actual notice of the '994 Patent, to the extent it preceded this suit being filed. At a minimum, this Complaint notifies Suddenlink that it is infringing, and are being accused of infringing, the '994 patent. It also recites facts which state a valid and plausible claim of infringement. To the extent Suddenlink continues its infringing activities post-suit, such infringement would be clear and necessarily willful. On information and belief, Suddenlink has a significant need to continue their infringing throttling activities which are infringing the '994 patent, including in order to stay competitive and to avoid losing customers. Plaintiff believes and contends that Suddenlink's continuance of its clear and inexcusable infringement of the '994 patent post suit is willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, and/or characteristic of a pirate.

49. On account of the foregoing, Plaintiff contends such post-suit activities by Suddenlink qualify this as an egregious case of misconduct beyond typical infringement, entitling Plaintiff to enhanced damages. Thus, Plaintiff requests an award of enhanced damages, including treble

damages, pursuant to 35 U.S.C. § 284.

50. Each of Suddenlink's aforesaid activities have been without authority and/or license from Plaintiff.

51. By way of their infringing activities, Suddenlink has caused and continue to cause Plaintiff to suffer damages, and Plaintiff is entitled to recover from Suddenlink the damages sustained by Plaintiff as a result of Suddenlink's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

52. Suddenlink's infringement of Plaintiff's rights under the patent-in-suit will continue to damage Plaintiff, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

53. Plaintiff also requests that the Court make a finding that this is an exceptional case entitling Plaintiff to recover their attorneys' fees and costs pursuant to 35 U.S.C. § 285.

## JURY DEMAND

54. Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure on all issues so triable.

## PRAYER FOR RELIEF

55. Plaintiff respectfully requests that the Court find in their favor and against Suddenlink, and that the Court grant Plaintiff the following relief:

A. An adjudication that one or more claims of the patent-in-suit has been directly and/or indirectly infringed, either literally and/or under the doctrine of equivalents, by Suddenlink;

B. An award to Plaintiff of damages adequate to compensate Plaintiff for Suddenlink's past infringement, together with pre-judgment and post-judgment interest, and any continuing or future infringement through the date such judgment is entered, including interest, costs,

expenses, and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

C. A grant of preliminary and permanent injunction pursuant to 35 U.S.C. § 283, enjoining Suddenlink and all persons, including its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert or participation therewith, from making, using, offering to sell, or selling in the United States or importing into the United States any methods, systems, or computer readable media that infringe any claim of the patent-in-suit, or contributing to or inducing the same by others from further acts of infringement with respect to the claims of the patent-in-suit;

D. That this Court declare that Suddenlink's post-suit infringement is and continues to be, willful, and, accordingly, award enhanced damages, including treble damages, pursuant to 35 U.S.C. § 284;

E. That this Court declare this to be an exceptional case and award Plaintiff reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

F. A judgment and order requiring Suddenlink to pay Plaintiff their damages, costs, expenses, fees, and prejudgment and post-judgment interest for Suddenlink's infringement of the patent-in-suit as provided under 35 U.S.C. §§ 284 and/or 285; and

G. Any and all further relief for which Plaintiff may show itself justly entitled that this Court deems just and proper.

August 2, 2018                                    Respectfully submitted,

                                                 /s/ *John J. Edmonds*
                                                 John J. Edmonds – Lead Counsel
                                                   jedmonds@ip-lit.com
                                                   Texas Bar No. 789758
                                                 Shea N. Palavan
                                                   spalavan@ip-lit.com
                                                   Texas Bar No. 24083616
                                                 Eric R. Carr
                                                   ecarr@ip-lit.com
                                                   Texas Bar No. 24091261
                                                 COLLINS, EDMONDS & SCHLATHER, PLLC
                                                 1616 South Voss Road, Suite 125
                                                 Houston, Texas 77057
                                                 T: 713-364-5291
                                                 F: 832-415-2535

                                                 *Attorneys for Plaintiff,*
                                                 *Preferential Networks IP, LLC*